**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

ANTHONY RASHAD BROWN,          *
# 13710-003,                   *
                               *
    Petitioner,          *
                               * CRIMINAL NO. 18-00029-KD-B
vs.                            * CIVIL ACTION NO. 20-00503-KD-B
                               *
UNITED STATES OF AMERICA,      *
                               *
    Respondent.          *


## REPORT AND RECOMMENDATION

Pending before the Court is Petitioner Anthony Rashad Brown's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Doc. 90). This matter has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and Rule 8(b) of the Rules Governing Section 2255 Proceedings, and is now ready for consideration.[1] Having carefully reviewed the record, the undersigned finds that no evidentiary hearing is

---

[1] Senior United States District Judge Callie V.S. Granade originally presided over the proceedings in this action, including Brown's suppression hearing. On July 30, 2018, this case was reassigned to then-Chief United States District Judge Kristi K. DuBose, who presided over Brown's change-of-plea and sentencing hearings. The undersigned has reviewed Brown's motion and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge Granade and Judge DuBose.

necessary for the disposition of this matter.[2]  Upon consideration, the undersigned hereby recommends that Brown's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence be **DENIED**, that this action be **DISMISSED with prejudice,** and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Anthony Rashad Brown.  The undersigned further recommends that in the event Brown requests a certificate of appealability and seeks to appeal *in forma pauperis,* said requests be **DENIED.**

## I.   BACKGROUND

In May 2018, Petitioner Anthony Rashad Brown ("Brown") was charged by superseding indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (count one), possession with the intent to distribute multiple tablets of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (count two), possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (count three), and possession with the intent to distribute approximately 1.7 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) (count four). (Doc. 24).  Counts one through three were based on firearm and

---

[2] A district court is not required to hold an evidentiary hearing on patently frivolous claims, claims that are based upon unsupported generalizations, or claims that are affirmatively contradicted by the record.  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989).

drug evidence recovered as the result of a vehicle stop on October 3, 2017, while count four was based on evidence recovered pursuant to a search warrant on November 3, 2017.  (See Docs. 24, 43).

On July 12, 2018, Brown's attorney, Tim Fleming ("Fleming"),[3] moved to suppress all evidence seized when Brown was arrested on October 3, 2017 and November 3, 2017, as well as any oral or written statements he made on those occasions.  (Doc. 43).  A suppression hearing was set for July 23, 2018.  (Doc. 44).  Prior to the suppression hearing,[4] the Government moved to dismiss counts two through four of the superseding indictment.  (Doc. 48).  The Court granted the Government's motion and dismissed counts two through four without prejudice.  (Doc. 50).

At the suppression hearing,[5] the Government called Sergeant Michael Kiser of the Selma Police Department to testify regarding

---

[3] The Court originally appointed attorney Thomas Walsh to represent Brown in this case.  (Doc. 7).  In May 2018, Brown wrote a letter to the Court requesting the appointment of new counsel.  (Doc. 23).  On June 1, 2018, the Court granted Brown's request and appointed Fleming to represent Brown.  (Doc. 28).

[4] In its July 19, 2018 response to Brown's motion to suppress, the Government noted that it planned to dismiss counts two through four before the suppression hearing.  (Doc. 46 at 3 n.1).  Thus, the Government's response to Brown's motion to suppress only addressed the evidence applicable to count one.  (See id.).

[5] In light of the Government's dismissal of counts two through four, the suppression hearing addressed only the firearm and ammunition evidence seized on October 3, 2017, as well as a spontaneous statement allegedly made by Brown on that date.  (See Doc. 58).

his stop and resulting search of Brown's vehicle on October 3, 2017, as well as a statement Brown allegedly made to his sister at the scene. (Doc. 58 at 4-10, 29). Fleming cross-examined Sergeant Kiser regarding the circumstances of the stop and resulting search. (Id. at 10-28, 30). He then called Brown and Brown's sister as witnesses to dispute Sergeant Kiser's version of events. (Id. at 31-54). The Court denied Brown's motion to suppress on the date of the hearing. (Doc. 49; Doc. 58 at 57-58).

Jury selection was scheduled to commence on July 30, 2018. (Doc. 47). However, Brown elected instead to enter a blind guilty plea that morning to the remaining count of the superseding indictment. (Docs. 56, 83). At his change-of-plea hearing on July 30, 2018, Brown was placed under oath and questioned by the Court as to the voluntariness of his plea. (See Doc. 83). Brown confirmed that he could read and write and had attended one year of college. (Id. at 2-3). Brown also confirmed that he had never been treated for mental illness or drug addiction and was not currently under the influence of any substance. (Id. at 3). Brown confirmed that he had gone over the facts of the case and discussed possible defenses with his attorney, and that he was satisfied with his attorney's advice to enter a guilty plea rather than proceed to trial. (Id. at 3-4). The Court informed Brown of the potential penalties for his offense, and Brown acknowledged that he understood those penalties. (Id. at 4). Brown also

acknowledged that he had gone over the sentencing guidelines with his attorney and understood that the guidelines were advisory only and that the Court was not required to follow them.  (Id.).  Brown further acknowledged that no one had attempted to force him to plead guilty.  (Id. at 5).  At the Court's request, counsel for the Government stated the elements of the offense and summarized the relevant offense conduct.[6]  (Id. at 5-6).  Brown agreed that

---

[6] Specifically, counsel for the Government stated:

MR. MAY:  Yes, Your Honor.  The defendant is pleading guilty to a violation of Title 18, United States of America Code Section 922(g)(1).

And the elements of this offense are that the defendant had been convicted of a felony offense, that is, a crime punishable by imprisonment by more than one year; that after that conviction, the defendant knowingly possessed a firearm; and that the firearm affected interstate commerce.

The United States would be prepared to prove the following facts: On October 3rd of 2017, the defendant was stopped in a vehicle in Selma, Alabama.  Pursuant to a search of the vehicle, law enforcement officers found a Ruger .40 caliber P-94 handgun with a round in the chamber and seven other rounds in the gun that was found underneath the driver's seat.

The defendant knowingly possessed the firearm.  He had previously been convicted of several felony convictions to include a possession with intent to distribute marijuana out of this court, I believe, in 2014.  So he has a prior felony.

And the Ruger was manufactured outside the State of Alabama, and, thereby, affected interstate commerce per traveling into the State of Alabama.

(Doc. 83 at 5-6).

the Government could prove the facts stated against him and entered a plea of guilty. (Id. at 6). The Court accepted Brown's plea and adjudicated him guilty as to the offense charged in count one. (Id.).

The presentence investigation report ("PSR") applied a two-point increase to Brown's offense level because the firearm Brown possessed was stolen, and a four-level increase because Brown possessed the firearm in connection with another felony offense.[7] (Doc. 59 at 6; Doc. 61 at 5). Fleming filed Brown's position with respect to sentencing factors, which included extensive objections to the PSR (including to the aforementioned offense-level increases) and multiple exhibits. (Docs. 60, 64, 65).

At Brown's initial sentencing hearing on November 9, 2018, Fleming reiterated Brown's objections to the offense-level increases based on the firearm being stolen and possessed in connection with another felony. (Doc. 84 at 14, 20-29). The Court overruled Brown's repeated objections to these enhancements. (Id. at 14, 27, 29). When the sentencing hearing reconvened on November 30, 2018, the Court ultimately concluded that Brown's guidelines imprisonment range was seventy to eighty-seven months. (Doc. 85 at 6). The Court sentenced Brown to seventy months' imprisonment, to run concurrently with the remainder of his federal revocation

---

[7] Brown's offense level was reduced by three points for acceptance of responsibility. (Doc. 59 at 7; Doc. 61 at 6).

sentence in <u>United States v. Brown</u>, No. 2:13-cr-00235-001-WS (S.D. Ala. 2013) ("<u>Brown I</u>").[8]  (<u>Id.</u> at 16-17).  After the Court imposed the sentence, Fleming reiterated the objections made in Brown's sentencing position pleading, including the objections to the offense-level increases for possession of a stolen weapon and possession of a firearm in connection with another felony.  (<u>Id.</u>). The Court concluded the sentencing hearing by stating that "for purposes of the record, I would find that this is a reasonable sentence, even if I have miscalculated the guidelines, that I would have imposed the sentence of this nature anyway."  (<u>Id.</u> at 21). On December 20, 2018, the Court entered a judgment consistent with the pronounced sentence.  (Doc. 73).

On December 6, 2018, Fleming filed a notice of appeal on Brown's behalf.[9]  (Doc. 70).  Shortly thereafter, the Court granted Fleming's motion to withdraw from the case and appointed attorney

---

[8] In <u>Brown I</u>, Brown pleaded guilty in this Court to possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1).  <u>Brown I</u>, ECF No. 34, 36.  He went to trial and was found not guilty as to the remaining counts.  <u>Id.</u>, ECF No. 41, 43-6.  In May 2014, the Court sentenced Brown to thirty-six months' imprisonment, with "credit for any time already spent in custody with regard to the facts of [<u>Brown I</u>,]" to be followed by thirty-six months of supervised release.  <u>Id.</u>, ECF No. 53, 63.  Brown's supervised release term commenced on September 22, 2015.  <u>Id.</u>, ECF No. 98.  In November 2017, the Court revoked Brown's supervised release term following his arrest in the instant case and sentenced him to twenty-four months' imprisonment.  <u>Id.</u>, ECF No. 106, 115.

[9] Fleming gave oral notice of Brown's intent to appeal at the sentencing hearing on November 30, 2018.  (Doc. 85 at 19).

Arthur Madden ("Madden") to represent Brown on direct appeal. (Doc. 72). In Brown's appellate brief, Madden raised two challenges to the Court's sentencing guidelines calculation. (See Doc. 97 at 40). First, Madden argued that the Court erroneously shifted the burden to Brown to disprove that he possessed the firearm in connection with another felony offense and failed to make a factual finding to support the enhancement. (Id. at 46-53). Second, Madden argued that the Court erred in applying the two-level enhancement for possession of a stolen firearm without requiring the Government to prove the disputed fact that the gun was stolen. (Id. at 53-56).

On October 10, 2019, the Eleventh Circuit Court of Appeals affirmed the district court's judgment. (Doc. 87). With regard to the first issue, the appellate court found that the district court properly placed the burden on the Government to prove that Brown possessed the firearm in connection with another felony offense, and that the district court did not clearly err in finding that Brown possessed the firearm in connection with another felony offense and that Brown's firearm facilitated felony drug possession. (Id. at 6-10). As to the second issue, the appellate court found that by failing to clearly object to the factual statement in the PSR that the gun was stolen, Brown waived his objection to that statement. (Id. at 10-11). The appellate court therefore found that the district court did not err in relying on

the undisputed fact that the firearm was stolen at the time Brown possessed it to enhance his sentence.  (Id. at 11).

On October 6, 2020,[10] Brown filed the instant *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, along with a supporting brief and exhibits.  (Docs. 90, 90-1, 90-2).  The Government filed a response in opposition to Brown's motion, and Brown filed a reply.  (Docs. 97, 98).  Thus, Brown's § 2255 motion has been fully briefed and is ripe for review.

## II.  **HABEAS STANDARD**

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal.").  A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164.  Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979).  Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same

---

[10] Under the mailbox rule, "a *pro se* prisoner's motion to vacate is deemed filed the date it is delivered to prison authorities for mailing." Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999) (per curiam).  Absent evidence to the contrary, that date is presumed to be the date the prisoner signed the motion. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam).  Brown's motion is dated October 6, 2020.  (Doc. 90 at 13).

> issues in a later collateral attack. . . . A defendant
> is, of course, entitled to a hearing of his claims, but
> not to duplicate hearings.  The appellate process does
> not permit reruns."  <u>Moore v. United States</u>, 598 F.2d
> 439, 441 (5th Cir. 1979).

<u>United States v. Evans</u>, 2008 U.S. Dist. LEXIS 59836, at *8-9, 2008 WL 3200694, at *3 (S.D. Ala. Aug. 6, 2008).

## III. <u>DISCUSSION</u>

In grounds one through five of his § 2255 motion, Brown raises various claims of ineffective assistance on the part of both Fleming and Madden.  (<u>See</u> Doc. 90 at 4-8, 14).  In ground six, Brown alleges that the United States Supreme Court's ruling in <u>Rehaif v. United States</u>, 139 S. Ct. 2191 (2019), rendered his guilty plea involuntary.  (<u>Id.</u> at 14-15).  In ground seven, Brown claims that the Court lacked jurisdiction over his offense under the Commerce Clause.  (<u>Id.</u> at 15).  In ground eight, Brown asserts that his conviction was obtained by the use of evidence obtained from an unconstitutional search and seizure.  (<u>Id.</u> at 16).  In ground nine, Brown contends that the Court erred in finding Sergeant Kiser's testimony at the suppression hearing to be credible.  (<u>Id.</u> at 17).  In ground ten, Brown alleges prosecutorial misconduct and claims that his due process rights were violated based on the alleged falsification of the November 3, 2017 search affidavit and warrant.  (<u>Id.</u>).  In grounds eleven and twelve, Brown raises essentially the same claims regarding the district court's

sentencing guideline calculation that the Eleventh Circuit rejected on direct appeal. (See id. at 18-19).

**Ground One**

In ground one, Brown alleges that Fleming was ineffective for failing to inform him prior to his guilty plea that the Government "had to prove that he knowingly com[m]itted the elements of the offense if he selected to go to trial." (Doc. 90 at 4). Brown claims that Fleming told him the Government "only had to prove that he was a prohibited person and that he constructively possessed the firearm." (Id.).

To prevail on a claim of ineffective assistance of counsel, Brown must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) that counsel's poor showing prejudiced his defense because there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Brown bears the burden of proving his ineffective assistance claims, and he must meet his burden on both prongs to succeed. Williams v. Allen, 598 F.3d 778, 789 (11th Cir. 2010). A court "need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) (internal citation omitted).

With regard to the first prong, the proper measure of attorney performance is whether counsel's performance was objectively reasonable under prevailing professional norms considering all the circumstances. Hinton v. Alabama, 571 U.S. 263, 273 (2014) (per curiam). This judicial scrutiny is highly deferential, and the Court adheres to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action. Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011); Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010).

To establish prejudice under Strickland, Brown must show more than that the alleged errors had "some conceivable effect on the outcome of the proceeding." Marquard v. Sec'y for Dep't of Corr., 429 F.3d 1278, 1305 (11th Cir. 2005) (quotation omitted). Rather, Brown "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

"[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison,

431 U.S. 63, 73-74 (1977). "Solemn declarations in open court carry a strong presumption of verity." Id. at 74. Thus, a petitioner's "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Id.

While it is not entirely clear what Brown means by stating that Fleming failed to inform him that the Government "had to prove that he knowingly committed the elements of the offense" (see Doc. 90 at 4), it is clear from the record that, regardless of how his claim is construed, Brown cannot satisfy the Strickland elements.

The record reflects that count one of Brown's superseding indictment alleged, in relevant part, that Brown,

> having been convicted of a crime punishable by imprisonment for a term exceeding one (1) year, to-wit: Possession with the Intent to Distribute Marijuana, on or about May 20, 2014, in the United States District Court for the Southern District of Alabama, Case Number 13-00235-WS, did knowingly possess, in and affecting interstate commerce, a firearm, namely, a loaded Ruger, Model P94, .40 caliber handgun, bearing serial number 341-66296.
>       In violation of Title 18, United States Code, Section 922(g)(1).

(Doc. 24 at 1).

At the change-of-plea hearing, counsel for the Government informed Brown that "the elements of this offense are that the defendant had been convicted of a felony offense, that is, a crime punishable by imprisonment by more than one year; that after that

13

conviction, the defendant knowingly possessed a firearm; and that the firearm affected interstate commerce." (Doc. 83 at 5).  After briefly describing the facts of the subject vehicle stop and resulting search, counsel stated:

> The defendant knowingly possessed the firearm.  He had previously been convicted of several felony convictions to include a possession with intent to distribute marijuana out of this court, I believe, in 2014.  So he has a prior felony.
> And the Ruger was manufactured outside the State of Alabama, and thereby, affected interstate commerce per traveling into the State of Alabama.

(Id. at 6).  The Court then asked Brown: "Do you agree the Government could prove those facts against you?"  (Id.).  Brown replied "[y]es, ma'am" and entered a plea of guilty.  (Id.).

Thus, to the extent Brown suggests he was unaware that the Government had to prove he knowingly possessed the firearm, this assertion is affirmatively contradicted by the record of the plea colloquy, which reflects that Brown was correctly informed of this requirement and agreed under oath prior to pleading guilty that the Government could prove that he knowingly possessed the firearm.  Consequently, Brown was not prejudiced by his attorney's alleged failure to properly advise him of this requirement.

To the extent Brown alleges Fleming was ineffective for failing to inform him that the Government was required to prove his knowledge of his felon status, he cannot show deficient performance.  Binding precedent at the time of Brown's district

14

court proceedings held that there was no knowledge requirement with respect to the status element of § 922(g). See United States v. Jackson, 120 F.3d 1226, 1229 (11th Cir. 1997) (per curiam), abrogated by Rehaif, 139 S. Ct. 2191 (2019); United States v. Rehaif, 888 F.3d 1138, 1147 (11th Cir. 2018), rev'd and remanded, 139 S. Ct. 2191 (2019). "And although Rehaif changed that, '[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.'" Dawkins v. United States, 2020 U.S. Dist. LEXIS 115712, at *4, 2020 WL 3576841, at *2 (N.D. Ala. July 1, 2020) (quoting Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994)). Moreover, as set forth in more detail *infra*, Brown could not possibly have denied that he knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year when he possessed the firearm forming the basis for his § 922(g)(1) conviction in this case. Therefore, Brown also cannot show prejudice based on this alleged error of counsel, because there is no reasonable probability that he would not have entered a guilty plea had he been informed of § 922(g)'s knowledge-of-status requirement. See Hill v. Lockhart, 474 U.S. 52, 59 (1985).

To the extent Brown suggests Fleming was ineffective for failing to advise him that the Government was required to prove that he knew that the firearm affected interstate commerce, he can show neither deficient performance nor prejudice. As the Supreme

15

Court explained in Rehaif, the "in or affecting commerce" statutory requirement is the "jurisdictional element" of the offense, and "[b]ecause jurisdictional elements normally have nothing to do with the wrongfulness of the defendant's conduct, such elements are not subject to the presumption in favor of scienter."  139 S. Ct. at 2196.  "Therefore a § 922(g) conviction does not require proof [that Brown] knew his possession of the firearm had an effect on interstate commerce." Weaver v. United States, 2020 U.S. Dist. LEXIS 201912, at *27, 2020 WL 6325724, at *10 (S.D. Ga. Oct. 2, 2020), report and recommendation adopted, 2020 U.S. Dist. LEXIS 200805, 2020 WL 6325703 (S.D. Ga. Oct. 28, 2020).

Finally, the Court notes that Brown's own statements suggest that he entered a guilty plea not based on Fleming's allegedly incorrect advice regarding the knowledge requirements of § 922(g), but rather that he did so in the expectation of a more favorable sentence.  In ground one of his § 2255 motion, Brown states that he "felt he had to plead guilty that day to ensure he would rec[ei]ve the points for acceptance of responsibility."  (Doc. 90 at 4).  And, letters from Brown to Fleming, which are attached as exhibits to Brown's § 2255 motion, state that Brown's expectation to be sentenced by Judge DuBose ("the fairest Judge to be sentenced by") rather than Judge Granade "really was the only reason [he] pled guilty."  (Doc. 90-2 at 3; see also Doc. 98 at 2).

Accordingly, Brown is entitled to no relief with respect to ground one.

**Ground Two**

In ground two, Brown asserts that Fleming was ineffective for failing to advise him that he would be waiving the right to appeal the district court's denial of his motion to suppress[11] by pleading guilty without a conditional plea. (Doc. 90 at 5). According to Brown, Fleming advised him that he would be reserving all of his appellate rights by entering a blind guilty plea. (Id.).

"A defendant's [unconditional] plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects in that defendant's court proceedings." United States v. Pierre, 120 F.3d 1153, 1155 (11th Cir. 1997). "A district court's refusal to suppress evidence is nonjurisdictional and is waived by a guilty plea." United States v. Byrd, 166 F. App'x 460, 462 (11th Cir. 2006) (per curiam). "A defendant who wishes to preserve appellate review of a non-jurisdictional defect while at the same time pleading guilty can do so only by entering 'a conditional plea' in accordance with

---

[11] Brown indicates that he intended to appeal the denial of his motion to suppress even after he entered a guilty plea unless he received a favorable sentence. (See Doc. 90 at 5; Doc. 90-2 at 1 ("As of now I am still interested in filing an appeal to my motion to suppress, unless Judge Dubose gives me a more than fair sentence, which I feel she will once she considers the mitigating factors.")).

[Federal Rule of Criminal Procedure] 11(a)(2)."[12] <u>Pierre</u>, 120 F.3d at 1155.  A "conditional plea must be in writing and must be consented to by the court and by the government." <u>Id.</u>

Brown has presented no evidence suggesting that the Government or the Court would have consented to a conditional plea, and nothing in the record supports such a finding.  "[B]ecause counsel is essentially powerless to effectuate a conditional plea, [any] alleged neglect to either advise defendant of the possibility of such a plea and or negotiate one on his behalf would not qualify as deficient performance under <u>Strickland</u>'s first prong." <u>Matthews v. United States</u>, 2008 WL 4762309, at *3 (S.D. Ga. Oct. 24, 2008) (quotation omitted).  "A conditional plea is not just the defendant's choice[,]" so the failure "to seek a conditional plea agreement cannot be charged to attorney incompetence." <u>United States v. Alvarez-Quiroga</u>, 901 F.2d 1433, 1437 (7th Cir. 1990).

Nor has Brown demonstrated that he was prejudiced by Fleming's alleged failure to inform him that his unconditional guilty plea would waive any right to appeal the suppression issue.  Brown has not shown a reasonable probability that he would have gone to trial (and foregone credit for acceptance of responsibility) had he known

---

[12] Rule 11(a)(2) states: "With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion.  A defendant who prevails on appeal may then withdraw the plea."  Fed. R. Crim. P. 11(a)(2).

he would not be able to appeal the denial of his motion to suppress. See Hill, 474 U.S. at 59.  On the contrary, Brown's filings strongly indicate that he made the calculated decision to plead guilty rather than proceed to trial in the expectation that he would receive a more favorable sentence as a result.  At his change-of-plea hearing, Brown told the Court that he wanted to waive his right to a trial, and that no one had forced him to plead guilty. (Doc. 83 at 5).  Brown never expressed an intent to appeal the suppression issue and never asked any questions regarding his appellate rights. (See id.).  Brown also fails to present evidence or argument establishing a reasonable probability that an appeal of the denial of his motion to suppress would have been successful. Accordingly, Brown has shown neither the deficient performance nor prejudice required to support this ineffective assistance claim.

**Ground Three**

In ground three, Brown raises various complaints regarding Fleming's performance before and during his suppression hearing. (See Doc. 90 at 7).  Brown asserts that Fleming was ineffective for failing to impeach Sergeant Kiser's credibility by pointing out his inconsistent testimony about how long he had been in law enforcement and showing that he falsified a search warrant affidavit. (Id.).  Brown further contends that Fleming was ineffective for failing to request a Franks hearing to expose an alleged forgery of a judge's signature on the November 2017 search

19

warrant, and that a <u>Franks</u> hearing should also have been held because an officer who was part of the chain of custody of the drug evidence was indicted on criminal charges. (<u>Id.</u>).

"It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998) (quotation omitted). A knowing, voluntary, and unconditional guilty plea "waives all non-jurisdictional defects occurring prior to the time of the plea," <u>Tiemens v. United States</u>, 724 F.2d 928, 929 (11th Cir. 1984) (per curiam), "and only an attack on the voluntary and knowing nature of the plea can be sustained." <u>Wilson v. United States</u>, 962 F.2d 996, 997 (11th Cir. 1992) (per curiam). Thus, "a § 2255 movant who entered a valid guilty plea waives any pre-plea ineffective assistance claims that do not concern his decision to enter the plea." <u>Baird v. United States</u>, 445 F. App'x 252, 254 (11th Cir. 2011) (per curiam); <u>see Wilson</u>, 962 F.2d at 997.

"Claims that trial counsel gave ineffective assistance in regard to a Fourth Amendment suppression issue are among those challenges waived by a knowing and voluntary guilty plea." <u>Skow v. United States</u>, 2016 U.S. Dist. LEXIS 78360, at *5, 2016 WL 3344577, at *2 (N.D. Ga. June 16, 2016); <u>see also Fisher v. United States</u>, 2012 U.S. Dist. LEXIS 181469, at *22, 2012 WL 6680315, at *6 (S.D. Ala. Dec. 3, 2012) ("Claims of ineffective assistance of

counsel that are based on the failure of a motion to suppress are also waived 'except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary.'") (citation omitted), report and recommendation adopted, 2012 U.S. Dist. LEXIS 180921, 2012 WL 6678608 (S.D. Ala. Dec. 21, 2012). As explained elsewhere in this report and recommendation, Brown has alleged but failed to demonstrate that his guilty plea was involuntary or unintelligently given. Thus, Brown's claims of ineffective assistance of counsel based on Fleming's performance before and during the suppression hearing are waived.

Even if these claims were not waived, Brown would not be entitled to relief. Brown alleges that Fleming was ineffective for failing to recognize in the midst of the suppression hearing that Sergeant Kiser's testimony on a background matter, i.e., his number of years in law enforcement, was inconsistent with his testimony at a hearing eight months earlier in a separate case in which Fleming was not involved. Specifically, the record reflects that Sergeant Kiser testified during Brown's November 28, 2017 revocation hearing in Brown I that he had been with the Selma Police Department for four years, had been in law enforcement for a total of ten years, and was employed in east Tennessee prior to being in Selma.[13]   (Doc. 90-2 at 35).   At the July 23, 2018

---

[13] Brown was represented by attorney Fred Tiemann at the November 2017 revocation hearing. See Brown I, ECF No. 115.

suppression hearing in this case, Sergeant Kiser testified that he was originally from east Tennessee, had been an officer with the Selma Police Department for five years, and did not have any previous law enforcement experience.  (Doc. 58 at 5).

Although Fleming did not point out this inconsistency between Sergeant Kiser's testimony at the revocation hearing in Brown I and his testimony at the suppression hearing in this case, the Court cannot find deficient performance under these circumstances. "The test for ineffectiveness is not whether counsel could have done more; perfection is not required." Waters v. Thomas, 46 F.3d 1506, 1518 (11th Cir. 1995).  "Nor is the test whether the best criminal defense attorneys might have done more." Id.  Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Id.; see also Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.").  The Court notes that Brown, who, unlike Fleming, was present at the November 2017 revocation hearing and was intimately aware of the details of his case and defense (see, e.g., Doc. 90-2), does not assert that he brought this matter to Fleming's attention prior to his cross-examination of Sergeant Kiser at the suppression hearing.[14]  Moreover, Brown fails to

---

[14] Even in his July 27, 2018 letter to Fleming criticizing Fleming's performance at the suppression hearing, Brown did not raise this

explain how highlighting Sergeant Kiser's inconsistent testimony would have challenged the officer's credibility in any meaningful way. Sergeant Kiser's number of years in law enforcement has little obvious relevance to the suppression issue, and it is not apparent why Sergeant Kiser would have had reason to be dishonest regarding this collateral matter.

With respect to Brown's assertion that Fleming was ineffective for failing to show that Sergeant Kiser falsified a November 2017 search affidavit and warrant, Brown does not state that Fleming was aware of, had reason to believe, or had evidence to support this allegation prior to or during the suppression hearing. Indeed, it appears that Fleming set forth the available facts with respect to this issue in Brown's motion to suppress. (Doc. 43). In that motion, Fleming argued that the November 3, 2017 search warrant was invalid because the search warrant affidavit attested to by Sergeant Kiser failed to state with specificity sufficient facts to support probable cause. (Id. at 6-8). Fleming also noted that the warrant stated that it was signed by Joseph Hagood, Judge of the District Court, Dallas County, Alabama; however, he pointed out that Joseph Hagood was not the District Court Judge for Dallas County but rather a Municipal Court Judge for the City of Selma. (Id. at 4). In

issue. (See Doc. 90-2 at 4-5).

23

response to Brown's motion to suppress, the Government voluntarily dismissed counts two through four of the superseding indictment, which included the count relating to the drugs recovered on November 3, 2017. (See Doc. 46 at 3 n.1; Docs. 48, 50).

Even if Fleming was aware of Brown's allegation against Sergeant Kiser, his decision to focus on the events of the October 2017 traffic stop - which was the only remaining issue at the suppression hearing - was not unreasonable. See Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) (noting that a strategic decision amounts to ineffective assistance of counsel "only if it was so patently unreasonable that no competent attorney would have chosen it"); Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1302 (11th Cir. 2019) ("Decisions about . . . which issues to press during trial are, without a doubt, strategic."); Yarborough, 540 U.S. at 8 ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect."). Fleming cross-examined Sergeant Kiser regarding the details of the stop and the fact that none of the officers involved were wearing their body cameras. (See Doc. 58 at 10-28, 30). Fleming next called Brown as a witness to dispute Sergeant Kiser's version of events, and he then called Brown's sister to contradict Sergeant Kiser's testimony regarding the spontaneous statement Brown

allegedly made at the scene.[15]  (See id. at 31-42, 50-54).  Brown
does not explain what information Fleming could have presented to
show that Sergeant Kiser falsified the November 2017 search
affidavit and warrant that was not already included in the motion
to suppress.  In sum, Brown has not shown that Fleming's failure
to demonstrate Sergeant Kiser's alleged intentional falsification
of the search affidavit and warrant prior to or during the
suppression hearing fell outside the wide range of reasonable
professional assistance.  See Strickland, 466 U.S. at 690.[16]

---

[15] The undersigned notes that the Court cut off Fleming's lines of
questioning regarding matters not directly related to the legality
of the search on October 3, 2017, including questions regarding
allegedly missing drug evidence.  (See Doc. 58 at 27-28, 50-51).

[16] Brown also cannot show that Fleming rendered constitutionally
ineffective assistance by failing to request a Franks hearing.  In
Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held
that "where the defendant makes a substantial preliminary showing
that a false statement knowingly and intentionally, or with
reckless disregard for the truth, was included by the affiant in
the warrant affidavit, and if the allegedly false statement is
necessary to the finding of probable cause," the court should hold
a hearing as to the veracity of the affidavit.  Id. at 155-56.
"The remedy for a Franks violation is for the court to declare the
search warrant invalid and suppress the evidence seized pursuant
to the warrant."  United States v. Valencia-Trujillo, 2006 WL
1320248, at *3 (M.D. Fla. May 12, 2006), aff'd, 573 F.3d 1171 (11th
Cir. 2009).  Even assuming arguendo that Brown could have made the
required preliminary showing, no Franks hearing regarding the
veracity of the November 2017 search warrant affidavit was
necessary in this case because the Government moved to dismiss all
three drug counts, including the count arising from the November
2017 search warrant, in response to Brown's motion to suppress.
See, e.g., United States v. James, 2018 U.S. Dist. LEXIS 121557,
at *3, 2018 WL 3518446, at *1 (D. Nev. July 20, 2018) ("Because
the Government has already agreed not to offer any evidence or
fruits obtained from that hotel-room search, there is no reason to

Because Brown's claims of ineffective assistance relating to the suppression issue are waived and without merit, Brown is not entitled to relief as to ground three.

**Ground Four**

In ground four, Brown alleges that Fleming was ineffective for failing to make a clear factual objection to the statement in the PSR that "[t]he firearm was stolen at the time [Brown possessed it]" in order to dispute the two-level enhancement based on the firearm being stolen at the time of possession. (Doc. 90 at 8).

Brown's exhibits reflect that on October 4, 2017, Willie Calhoun of the Selma Police Department prepared a firearms trace summary stating that the Ruger was traced to a purchaser in Selma, Alabama. (Doc. 90-2 at 30). A firearms trace summary completed by Thomas Nevin, Jr. of the ATF on December 19, 2017 showed the same information. (See id. at 31).

Paragraph 17 of Brown's draft PSR stated:

On July 20, 2018, ATF Special Agent Nevin interviewed [the purchaser] at his residence located in Selma, Alabama. The interview pertained to [the purchaser's] purchase of a Ruger, P94, .40-caliber, semiautomatic pistol . . . . SPD recovered the same firearm from Anthony Brown's vehicle on October 3, 2017. [The purchaser] advised that his home was burglarized on December 4, 2016, and that the Ruger .40-caliber pistol was taken from his home during the burglary.

---

hold a Franks hearing as James already has the relief that a Franks hearing might afford.").

(Doc. 59 at 5).  In the offense level computation section of the draft PSR, paragraph 26 stated: "**Specific Offense Characteristics:** The firearm was stolen at the time the defendant possessed the firearm; therefore, two levels are added.  U.S.S.G. § 2K2.1(b)(1)." (Id. at 6).

Brown's sentencing position pleading stated:

Defendant objects to paragraph #26 and opposes the 2-level increase pursuant to U.S.S.G.§2K2.1(b)(1). The offense to which the defendant pled guilty did not involve three (3) or more firearms.

In the event said paragraph #26 incorrectly cites subsection (b)(1) rather than (b)(4) (relating to stolen firearm)**, the defendant submits that at the time of arrest (or close proximity thereto) the weapon was traced through ATF and the weapon was not shown as stolen.** Only moments before the defendant entered his guilty plea on the day of his jury trial (07/30/18) was he informed that the weapon was then being declared stolen due to record keeping errors by local Selma PD and/or Dallas County Sheriff's Office.
U.S.S.G.§ 2K2.1(b)(4) imposes strict liability for the weapon being stolen and increases the defendant's sentencing range by 2 levels. The defendant submits that it is unfair and unconstitutional to impose a "strict liability" standard and additional incarceration (criminal punishment) upon someone who has no knowledge of the presence of a gun, or its status as being stolen. This principal instills criminal liability upon an unwitting package delivery person for having in his possession a stolen weapon contained in one of his packages. It imposes punishment (increased punishment) for merely being in the presence of a gun that has been stolen. By imposing such a standard as called for in §2K2.1(b)(4), the guidelines run directly afoul of the objectives and concerns of punishing someone for an offense like that charged against the defendant or under similar statutes such as §924(c)(1) for unwittingly and coincidentally being in the presence of a gun. A gun that no one knew was stolen. As it stands, the Courts are reluctant to impose punishment for coincidental

presence of the gun, but if that gun is stolen, then no longer are those concerns relevant. This is incongruous with the spirit of the law expressed in <u>U.S. v. Stallings</u>, 463 F.3d 1218, 1221 (11th Cir. 2006) cited later in this Sentencing Position. Although the defense has been unable to identify case law supporting the proposition that U.S.S.G.§ 2K2.1(b)(4) is unconstitutional, the defendant feels that it should be so held.

(Doc. 60 at 3-5) (emphasis added).

Like the draft PSR, the revised final PSR included the two-level increase for possession of a stolen firearm. (Doc. 61 at 5). The PSR addendum stated:

> 4. The defendant objects to the application of a two-level increase for the defendant's possession of a stolen firearm. (It is noted that the typographical error wherein the probation officer erroneously cited U.S.S.G. § 2K2.1(b)(1) has been corrected to properly cite U.S.S.G. § 2K2.1(b)(4).) (¶ 26)
>
> **Probation Officer's Response**: As reflected in the provided discovery, ATF Agent Nevin interviewed [the purchaser of the firearm] who reported that on December 4, 2016, his Ruger, .40-caliber firearm . . . was stolen from his home. Selma Police Department recovered the stolen firearm from Anthony Brown's vehicle on October 3, 2017. For these reasons, the two-level enhancement is properly applied, and the report remains unchanged in this regard.

(Doc. 62 at 3).

At Brown's sentencing hearing on November 9, 2018, the Court addressed Brown's objections, in relevant part, as follows:

> THE COURT:  The last thing you say is it's unfair to impose two points because the firearm was stolen.  I guess you are saying there's no evidence he stole it.
>
> MR. FLEMING:  There's no evidence that he stole it, Judge.

THE COURT:  Right.  But of course, you know that's not the standard under the guidelines.

MR. FLEMING:  I also object to – I phrased it as strict liability for the fact that the gun may have, in fact, been stolen.

THE COURT:  You are characterizing it exactly right. He's strictly liable for the nature of the gun.

MR. FLEMING:  Even with no knowledge of it.

THE COURT:  It's correct to give it to him even without the knowledge under the guidelines.  He doesn't have to have knowledge under the guidelines.  So that objection is overruled.

(Doc. 84 at 14).  Later, the following exchange occurred:

THE COURT:  Any other objections?

[The defendant and counsel confer off the record.]

MR. FLEMING:  Judge, again, the defendant is asking me to reiterate to the Court the stolen gun issue.  He wants me to point out to the Court, too, that the gun went through too –

THE COURT: I don't care.  I mean, how many times I gotta say this?  The guidelines are the guidelines.  The guidelines, strict liability.  If you are possessing a gun and it's stolen, you are responsible.  You get two points.
          All right.  Next objection.

(Id. at 29-30).

On direct appeal, Brown argued that the Court procedurally erred in increasing his offense level based on possession of a stolen firearm because he did not concede the firearm was stolen and the Government failed to prove that fact.  (Doc. 97 at 53-56). The Eleventh Circuit found that, despite Brown's objection to

paragraph 26 of the draft PSR in his sentencing position pleading and Fleming's arguments at the sentencing hearing, Brown did not clearly object to the factual statement in the PSR that "[t]he firearm was stolen at the time the defendant possessed the firearm[.]" (Doc. 87 at 10-11). Thus, the appellate court found that the district court did not err in relying on the undisputed factual statement in the PSR that the firearm was stolen at the time Brown possessed it. (Id. at 11).

Brown claims that "Fleming failed to argue that the two ATF traces . . . showed that the firearm was never reported as stolen." (Doc. 90 at 8). But this is incorrect, as Fleming made this argument in Brown's sentencing position pleading. (See Doc. 60 at 3). Construing Brown's arguments liberally, he suggests that Fleming should also have presented the two ATF traces as exhibits. According to Brown, this "would have been more than enough to amount to a factual objection," which would have required the Government to produce additional evidence to prove the gun was stolen. (See Doc. 90 at 8).

Even assuming that presenting the two ATF traces would have amounted to a factual objection to the firearm being stolen, Brown has presented nothing to suggest that there was any reason to believe that a factual challenge would have had merit. Brown posits that the firearms traces "proved the gun was not stolen." (Id.). But in fact, the traces show that the purchaser of the

firearm was someone other than Brown or Jasmine Richardson (his child's mother), to whom Brown claimed the gun belonged. (See Doc. 58 at 40-41, 47). Notably, Brown does not allege that he or Jasmine Richardson had any connection to the individual listed as the purchaser on the firearms traces, or that he or Richardson obtained the gun from the purchaser legally. Nor do the firearms traces necessarily contradict the statement in the PSR that the Ruger was stolen from the purchaser's home in December 2016.

Given the foregoing, Brown cannot show that no competent counsel would have failed to make a clear factual objection to the fact of the firearm being stolen under these circumstances. Nor has he shown a reasonable probability that he would have received a lesser sentence had Fleming clearly raised a factual objection to the PSR's statement that "[t]he firearm was stolen at the time [Brown possessed [it]" and thereby required the Government to present further evidence to support this statement. As a result, Brown is entitled to no relief as to ground four.[17]

_____

[17] The undersigned observes that Fleming's efforts with respect to Brown's sentencing were extensive and to a significant extent successful, given that the PSR calculated Brown's guidelines imprisonment range at 100 to 120 months (see Doc. 59 at 14; Doc. 61 at 13), while the Court calculated Brown's range at seventy to eighty-seven months after resolving all objections. (See Doc. 74 at 1; Doc. 85 at 6).

**Ground Five**

In ground five, Brown claims that Madden was ineffective for failing to supplement his appellate brief to include an argument based on Rehaif, which was decided while his appeal was pending. (Doc. 90 at 14).  Brown also states that Madden refused to make "other important arguments" that he requested, including that his "alleged offense did not affect interstate commerce and the government lacked jurisdiction." (Id.).

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland." Dell v. United States, 710 F.3d 1267, 1273 (11th Cir. 2013) (quotation omitted).  To determine whether such a claim has merit, a court "must decide whether the arguments the defendant alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).  "Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" Id. (citation omitted).  Nor is appellate counsel required to raise every nonfrivolous issue requested by a client if counsel, as a matter of professional judgment, decides not to present those points. Jones v. Barnes, 463 U.S. 745, 751 (1983).  On the contrary, "winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate

32

advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quotation omitted).  However, if "the omitted claim would have had a reasonable probability of success on appeal, then counsel's performance necessarily resulted in prejudice." Joiner v. United States, 103 F.3d 961, 963 (11th Cir. 1997) (per curiam).

As noted *supra*, Brown was charged with and pleaded guilty to knowingly possessing a firearm as a convicted felon in violation of § 922(g)(1).  At the time of Brown's guilty plea, "the law of this Circuit provided that a § 922(g) conviction for being a felon in possession of a firearm required proof that the defendant knowingly possessed a firearm, but it did not require proof that the defendant knew he was a convicted felon." United States v. Roosevelt Coats, 8 F.4th 1228, 1234 (11th Cir. 2021) (citing Jackson, 120 F.3d at 1229).  The law changed while Brown's case was pending on appeal, when the Supreme Court held that in a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm *and* knew that he belonged to the relevant category of persons prohibited from possessing a firearm.  See Rehaif, 139 S. Ct. at 2200.  Thus, Rehaif clarified that "when a defendant is charged with being a felon in possession of a firearm under § 922(g)(1), the knowledge-of-status element requires proof that at the time he possessed the firearm he was aware he had a prior conviction for 'a crime punishable by imprisonment for a term exceeding one

year.'" Roosevelt Coats, 8 F.4th at 1234-35 (quoting 18 U.S.C. § 922(g)(1)).

The superseding indictment in this case alleged that Brown was a felon who knowingly possessed a firearm, but it did not expressly charge that Brown had knowledge of his felon status at the time of possession. (See Doc. 24 at 1). Nor was Brown informed of the knowledge-of-status requirement at the change-of-plea hearing. (See Doc. 83). Brown did not claim ignorance of his convicted-felon status or argue that § 922(g)(1) required knowledge of such status at the district court level. He also made no such argument on direct appeal, despite the fact that his appeal was still pending when the Supreme Court issued its decision in Rehaif. Brown alleges that Madden was ineffective for failing to supplement his appellate brief to include an argument based on Rehaif. (Doc. 90 at 14).

Because Brown neither asserted ignorance of his status as a convicted felon at the time he possessed the firearm nor argued that § 922(g)(1) contained a knowledge-of-status requirement at the district court level, an appellate challenge to his guilty plea based on Rehaif would have been reviewed for plain error. See, e.g., Roosevelt Coats, 8 F.4th at 1235; United States v. Green, 798 F. App'x 527, 533 (11th Cir. 2020) (per curiam). To establish plain error, Brown would have had to show that (1) there was an error, (2) the error was plain, and (3) the error affected

his substantial rights.    See Roosevelt Coats, 8 F.4th at 1235.
The first two prongs were satisfied because Brown was not informed
of § 922(g)'s knowledge-of status requirement prior to his guilty
plea.    See id. at 1235-36.    However, to establish that his
substantial rights were affected,[18] Brown would have been required
to show that, had the district court "correctly advised him of the
*mens rea* element of the offense, there is a reasonable probability
that he would not have pled guilty."    See id. at 1237-38 (quotation
omitted).

Thus, the relevant question is whether there is a reasonable
probability Brown would not have entered a guilty plea had he known
that the Government was required to prove that he knew he had been
convicted of "a crime punishable by imprisonment for a term
exceeding one year" when he possessed the firearm.    See id.; 18
U.S.C. § 922(g)(1).    There can be no doubt that Brown was fully
aware that he had been convicted of a crime punishable by
imprisonment for a term exceeding one year when he possessed the
firearm at issue in this case.[19]    Thus, there is no reason to

---

[18] Because the plain-error doctrine is intended to "correct only
particularly egregious errors," United States v. Young, 470 U.S.
1, 15 (1985), "a reviewing court may consult the whole record when
considering the effect of any error on substantial rights." United
States v. Vonn, 535 U.S. 55, 59 (2002).

[19] Although he tries (see Doc. 90-1 at 1), Brown cannot credibly
argue that he was unaware that he had been convicted of a crime
punishable by imprisonment for a term exceeding one year at the
time of his arrest for possession of a firearm in this case.

believe that Brown, had he been informed of § 922(g)(1)'s knowledge-of-status requirement, would have decided not to plead

--------------------

In Brown I, count four of the indictment charged Brown with distributing and possessing with intent to distribute approximately 26 pounds of a mixture and substance containing marijuana, in violation of 21 U.S.C. § 841(a)(1). Brown I, ECF No. 1. The penalty page of the indictment noted that the maximum prison term under count four was five years. Id., ECF No. 1-1. At his change-of-plea hearing in February 2014, Brown confirmed under oath that he had received a copy of the indictment, had a full opportunity to read and review it with his attorney, and fully understood the charges contained therein. Id., ECF No. 36, p. 6. In addition, the Court specifically informed Brown that if convicted of count four, he "could receive a term of imprisonment up to five years," and Brown confirmed that he understood. Id., ECF No. 36, pp. 7-8. The Court also informed Brown that if convicted of the charge, he could "lose . . . the right to possess any kind of firearm," and Brown again confirmed that he understood. Id., ECF No. 36, p. 8. In May 2014, Brown was sentenced to thirty-six months in prison, to be followed by thirty-six months of supervised release. Id., ECF No. 53, 63. At the sentencing hearing, the Court specifically stated to Brown that "you're hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 36 months as to Count 4." Id., ECF No. 63, p. 50.

At his suppression hearing in this case, Brown admitted that he was a two-time convicted felon and evidenced awareness of the facts of his prior felony drug convictions. (See Doc. 58 at 43). Brown did not object to the facts listed in the PSR that he pleaded guilty to first-degree marijuana possession in Dallas County Circuit Court in August 2014 and was sentenced to 97 months' custody, suspended for three years' probation, in that case; and that he pleaded guilty to possession with intent to distribute marijuana and was sentenced to three years' imprisonment in Brown I. (See Doc. 59 at 8-9; Doc. 60). Brown also confirmed under oath during the plea colloquy that he had previously been convicted of several felonies, including his 2014 federal conviction for possession with intent to distribute marijuana in Brown I. (Doc. 83 at 6). These facts, taken together, demonstrate that Brown knew of his status as a convicted felon at the time he possessed the firearm.

guilty and would have instead staked his fate on the facially preposterous defense that he was unaware of his prior felony convictions. See Roosevelt Coats, 8 F.4th at 1238-40; Green, 798 F. App'x at 533; United States v. Ward, 796 F. App'x 591, 600-01 (11th Cir. 2019) (per curiam); United States v. Jones, 800 F. App'x 789, 791-92 (11th Cir. 2020) (per curiam). Thus, any Rehaif claim raised by Brown on direct appeal would have failed on the third plain error factor.

Accordingly, Brown cannot show that Madden was ineffective for not adding a Rehaif claim that had no reasonable chance of success and focusing on stronger sentencing-related arguments. See Hill v. United States, 2021 U.S. Dist. LEXIS 115797, at *26-30, 2021 WL 2546468, at *9-10 (S.D. Ala. Apr. 27, 2021), report and recommendation adopted, 2021 U.S. Dist. LEXIS 115439, 2021 WL 2534113 (S.D. Ala. June 17, 2021), certificate of appealability denied, 2021 U.S. App. LEXIS 39227, 2021 WL 6753641 (11th Cir. Dec. 10, 2021). Likewise, Madden was not ineffective for not including the non-meritorious jurisdictional arguments requested by Brown. Thus, Brown is entitled to no relief with respect to his ineffective assistance of appellate counsel claims in ground five.

### Ground Six

In ground six, Brown argues that his guilty plea was rendered unknowing and involuntary by the Supreme Court's ruling in Rehaif.

(Doc. 90 at 14).  Brown claims he would have chosen to go to trial had he been aware that the Government was required to prove that he knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year at the time of the offense.  (Id. at 15).  The Government argues that this claim is procedurally defaulted because Brown did not raise it in the district court or on direct appeal.  (Doc. 97 at 28-29).

"Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding."  Lynn, 365 F.3d at 1234.  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development."  Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994) (per curiam).

As noted *supra*, Brown did not claim ignorance of his status as a convicted felon or argue that § 922(g)(1) required knowledge of such status in the district court.  Nor did he raise a Rehaif-based argument on direct appeal.  When a defendant fails to pursue an available claim on direct appeal, the claim will not be considered in a § 2255 motion "unless he can either (1) show cause to excuse the default and actual prejudice from the claimed error, or (2) show that he is actually innocent of the § [922(g)]

conviction." <u>Granda v. United States</u>, 990 F.3d 1272, 1286 (11th Cir. 2021).

To demonstrate cause under the first exception to the procedural default rule, a petitioner must "show that 'some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule,' or that his attorney's performance failed to meet the <u>Strickland</u> standard for effective assistance of counsel." <u>Reece v. United States</u>, 119 F.3d 1462, 1465 (11th Cir. 1997) (citation omitted). To demonstrate actual prejudice, a petitioner must show that the error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982) (emphasis in original).

Brown states that he did not raise a <u>Rehaif</u> claim on direct appeal because his appellate counsel "failed to supplement this argument in the direct appeal brief." (Doc. 90 at 15). However, in order to constitute cause to excuse a procedural default, a "claim of ineffective assistance must have merit." <u>Nyhuis</u>, 211 F.3d at 1344. And, as discussed in connection with the previous ground for relief, Madden was not ineffective for not raising a <u>Rehaif</u>-based claim that had no reasonable prospect of success. Therefore, Brown has failed to establish cause to excuse his procedural default of this claim.

Under the second exception to the procedural default rule, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Lynn, 365 F.3d at 1234 (quotation omitted). "To show actual innocence of the crime of conviction, a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of the new evidence of innocence." McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Brown has made no such showing here, and his claim is therefore defaulted from habeas review.

In addition to being procedurally defaulted, Brown's Rehaif claim fails on the merits "because there is no reasonable basis to conclude he lacked knowledge of his status as a convicted felon at the time of his offense and he cannot show a reasonable probability that, but for the Rehaif errors, the outcome of his case would have been different." See McCullough v. United States, 2021 U.S. Dist. LEXIS 2033, at *19, 2021 WL 279975, at 9 (M.D. Ala. Jan. 5, 2021), report and recommendation adopted, 2021 U.S. Dist. LEXIS 15399, 2021 WL 279968 (M.D. Ala. Jan. 27, 2021); see also Long v. United States, 2020 U.S. Dist. LEXIS 236168, at *21-24, 2020 WL 7391292, at *8-9 (S.D. Ala. Nov. 9, 2020), report and recommendation adopted, 2020 U.S. Dist. LEXIS 235900, 2020 WL

7395140 (S.D. Ala. Dec. 16, 2020).  Thus, Brown is entitled to no relief with respect to ground six.

### Ground Seven

In ground seven, Brown claims "[l]ack of jurisdiction under the commerce clause in light of <u>Rehaif v. United States</u>."  (Doc. 90 at 15).  Although he couches his claim in jurisdictional terms, Brown's argument appears to be that, given <u>Rehaif</u>'s interpretation of § 922(g) as requiring the Government to establish that a defendant knew he violated the material elements of the statute, the Government was required to allege and prove that he had knowledge of the firearm's interstate nexus.[20]  (<u>See</u> Doc. 90 at 15; Doc. 90-1 at 2).

Even if this argument were not procedurally defaulted, it would fail on its merits.  The Supreme Court explained in <u>Rehaif</u>

_____

[20] Specifically, Brown argues:

> Since <u>Rehaif</u> has interpreted the elements of § 922(g) to require that a defendant "knowingly" violates any of such, the government must also show that the defendant had knowledge of the interstate commerce nexus.  The interstate nexus is a material element of § 922(g) just as much as the other two elements.  It would be grossly contradictive for the Supreme Court to assert that the word "knowingly" skips over the interstate commerce element.

> Because the defendant had no knowledge of the interstate nexus, this accidental possession was intrastate only.  The government lacked jurisdiction.

(Doc. 90 at 15).

that the "in or affecting commerce" requirement of § 922(g) is the "jurisdictional element" of the offense, and it explicitly declined to apply the scienter requirement to that element. See Rehaif, 139 S. Ct. at 2196; see also Slocum v. United States, 2021 U.S. Dist. LEXIS 157896, at *9, 2021 WL 3706682, at *4 (S.D.W. Va. Aug. 20, 2021) ("Rehaif did not . . . hold that the government must prove that a defendant knew he possessed a firearm in or affecting commerce in a prosecution under § 922(g). Although a § 922(g) conviction requires that a firearm in question be possessed 'in or affecting commerce,' the Supreme Court explicitly noted that this is a jurisdictional element to which scienter does not apply.") (emphasis in original); United States v. Goodjohn, 2020 U.S. Dist. LEXIS 118477, at *4, 2020 WL 3642684, at *2 (S.D. Ohio July 6, 2020) ("The Supreme Court [in Rehaif] declined to apply the scienter requirement to the jurisdictional element, to wit, did the firearm move in or affect interstate commerce."), report and recommendation adopted, 2020 U.S. Dist. LEXIS 158586, 2020 WL 5210947 (S.D. Ohio Sept. 1, 2020); Weaver, 2020 U.S. Dist. LEXIS 201912, at *27, 2020 WL 6325724, at *10 (holding that "a § 922(g) conviction does not require proof Petitioner knew his possession of the firearm had an effect on interstate commerce"); United States v. Ferguson, 2020 U.S. App. LEXIS 17516, at *9, 2020 WL 10140803, at *3 (6th Cir. June 3, 2020) ("Ferguson's argument that the scienter requirement also applies to the interstate commerce

element of § 922(g) is without merit."), <u>cert. denied</u>, 141 S. Ct. 2812 (2021); <u>Robertson v. United States</u>, 2020 U.S. Dist. LEXIS 217410, at *7, 2020 WL 6852661, at *3 (W.D. Tenn. Nov. 20, 2020) ("The [<u>Rehaif</u>] Court specifically ruled that the jurisdictional element (that the firearm be in or affecting interstate commerce) was not subject to a presumption of scienter or that the defendant acted knowingly. Thus, if Petitioner asserts that he had no knowledge that the weapon affected interstate commerce or crossed state lines, he is not entitled to relief based on <u>Rehaif</u>.") (internal citation omitted); <u>United States v. Schafer</u>, 2019 U.S. Dist. LEXIS 156654, at *4-5, 2019 WL 4393682, at *2 (N.D. Ind. Sept. 12, 2019) (explaining that <u>Rehaif</u> did not make the "interpretive leap" to "apply a 'knowing' scienter to the interstate commerce element").

Brown further argues that "[t]he commerce clause does not stretch congress' power to reach" intrastate possession of a firearm, and that "[a] defendant would have to possess the firearm while traveling in interstate commerce or while on federal property for mere possession to be a federal offense." (Doc. 90-1 at 2). To the extent these assertions amount to either a facial or as-applied constitutional challenge to Brown's statute of conviction, they are due to be rejected.

First, it is well-settled that § 922(g)(1) "is not a facially unconstitutional exercise of Congress's power under the Commerce

Clause because it contains an express jurisdictional requirement" that "is satisfied when the firearm in question has a 'minimal nexus' to interstate commerce." United States v. Jordan, 635 F.3d 1181, 1189 (11th Cir. 2011); see United States v. Dupree, 258 F.3d 1258, 1259 (11th Cir. 2001) (holding "that § 922(g) is a constitutional exercise of Congress's commerce power"); United States v. McAllister, 77 F.3d 387, 390 (11th Cir. 1996) ("§ 922(g) makes it unlawful for a felon to 'possess *in or affecting commerce*, any firearm or ammunition.'  This jurisdictional element defeats McAllister's facial challenge to the constitutionality of § 922(g)(1).") (emphasis in original) (internal citation omitted).

As to Brown's claim that intrastate possession of a firearm does not satisfy § 922(g)'s jurisdictional requirement, the Court notes that he concedes the firearm found in his possession had previously traveled in interstate commerce.[21]  The Eleventh Circuit has "held that no more is required to satisfy the jurisdictional limitations of section 922(g)." United States v. Cunningham, 161 F.3d 1343, 1346 (11th Cir. 1998); see McAllister, 77 F.3d at 390 (relying on Scarborough v. United States, 431 U.S. 563, 575 (1977),

---

[21] Brown stipulated at his change-of-plea hearing that "the Ruger was manufactured outside the State of Alabama, and, thereby, affected interstate commerce per traveling into the State of Alabama.  (Doc. 83 at 6).  And, Brown's brief in support of his § 2255 motion acknowledges that the firearm "was shipped from the manufacturer in Arizona to a licensed dealer, the Farmer's Co-op, in Selma, Alabama."  (Doc. 90-1 at 2).

for the proposition that "the interstate nexus requirement for the predecessor statute to § 922(g) was met once the government demonstrated that the gun had previously travelled in interstate commerce"); United States v. Scott, 263 F.3d 1270, 1274 (11th Cir. 2001) (per curiam) (finding testimony that the "pistol that [the defendant] possessed was manufactured in California and had moved in interstate commerce to Georgia where [the defendant] was caught with the weapon" to be "sufficient to demonstrate the required nexus to interstate commerce"); Dupree, 258 F.3d at 1260 ("Dupree also argues that, because . . . he did not purchase the gun, his possession of the firearm cannot be said to have affected interstate commerce.  However, § 922(g) requires only a minimal nexus to interstate commerce, . . . and by brandishing a firearm that was manufactured in California and found in his car [in Georgia], Dupree's actions satisfy this test.").  Accordingly, Brown is entitled to no relief as to ground seven.

**Grounds Eight, Nine, and Ten**

In ground eight, Brown claims that the firearm was obtained as the result of an unconstitutional search and seizure.  (Doc. 90 at 16).  In ground nine, Brown contends that the district court erred in finding Sergeant Kiser's testimony at the suppression hearing to be credible.  (Id. at 17).  In ground ten, Brown alleges that the Government committed prosecutorial misconduct and violated his right to due process by permitting Sergeant Kiser to

testify at the suppression hearing despite his alleged falsification of the November 2017 search affidavit and warrant. (Id.).

As noted *supra*, "[a] knowing and voluntary guilty plea waives all non-jurisdictional, pre-plea defects, including ineffective assistance of counsel with respect to issues not implicating the voluntariness of the plea." Keye v. Perry, 2015 U.S. Dist. LEXIS 82068, at *8, 2015 WL 3902330, at *3 (S.D. Ga. June 24, 2015), report and recommendation adopted, 2015 U.S. Dist. LEXIS 114868, 2015 WL 5116830 (S.D. Ga. Aug. 28, 2015); see Wilson, 962 F.2d at 997. This includes challenges "of a constitutional nature." Baird, 445 F. App'x at 254. "A district court's refusal to suppress evidence is non-jurisdictional and is waived by a guilty plea." United States v. White, 136 F. App'x 227, 228 (11th Cir. 2005) (per curiam); see United States v. Aguilar, 196 F. App'x 837, 838 (11th Cir. 2006) (per curiam) (holding that defendant's voluntary, unconditional guilty plea waived his right to challenge both the denial of his motion to suppress and the legality of the search).

Likewise, claims regarding perjury and prosecutorial misconduct are non-jurisdictional and waived by a guilty plea. See Franklin v. United States, 589 F.2d 192, 194–95 (5th Cir. 1979)

(per curiam)[22] ("By entering a knowing, voluntary, intelligent guilty plea on the advice of competent counsel, [petitioner] has waived all nonjurisdictional complaints . . . [such as] claims regarding Miranda warnings, coerced confessions, perjury and illegal searches and seizures . . . ."); United States v. Coleman, 653 F. App'x 712, 713-14 (11th Cir. 2016) (per curiam) (stating that by entering a knowing and voluntary unconditional guilty plea, defendant waived the right to raise an argument about prosecutorial misconduct during grand jury proceedings); Clayton v. United States, 2019 U.S. Dist. LEXIS 88496, at *29-30, 2019 WL 2269837, at *10 (M.D. Fla. May 28, 2019) ("Clayton's (unfounded) allegation of prosecutorial misconduct is non-jurisdictional.  Thus, Clayton waived this claim through his guilty plea, which the record shows he made knowingly, voluntarily, and with the assistance of competent counsel.").

Thus, Brown waived his right to challenge the district court's denial of his motion to suppress evidence, or to raise related claims regarding unconstitutional searches and seizures, perjury or witness credibility, due process, and prosecutorial misconduct, unless his guilty plea was involuntary or unintelligently given.  And, as discussed in connection with previous grounds for relief,

---

[22] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Brown has not shown that his guilty plea was unknowing or involuntary, or that it was rendered so based on ineffective assistance of counsel. Accordingly, Brown's claims in grounds eight through ten are barred from consideration on collateral review.

**Grounds Eleven and Twelve**

In grounds eleven and twelve, Brown raises the same issues regarding the Court's calculation of the sentencing guidelines that his appellate counsel raised on direct appeal. (See Doc. 90 at 18-19; Doc. 97 at 33-57). In ground eleven, Brown alleges that the district court procedurally erred by increasing his offense level for a stolen firearm without requiring the Government to present evidence in order to meet its burden to show that the firearm was stolen. (Doc. 90 at 18). In ground twelve, Brown asserts that the district court misapplied the four-level enhancement for possession of a firearm in connection with another felony offense by improperly shifting the burden of proof to Brown and failing to make factual findings as to the basis for the enhancement. (Id. at 19). The Government argues that these claims are barred by the doctrine against re-litigation and are not cognizable on collateral review. (Doc. 97 at 29-31).

"[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." Nyhuis, 211 F.3d at 1343 (quotation omitted);

see Stoufflet v. United States, 757 F.3d 1236, 1239 (11th Cir. 2014) ("It is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence, 28 U.S.C. § 2255, that he already raised and that [the Eleventh Circuit] rejected in his direct appeal."). A claim that was rejected on direct appeal does not merit rehearing even when based "on a different, but previously available, legal theory." Nyhuis, 211 F.3d at 1343. However, a defendant can overcome this procedural bar to re-litigation if his new claim is based on an intervening change in substantive law. Davis v. United States, 417 U.S. 333, 342 (1974).

The Eleventh Circuit squarely addressed and decided the same claims on direct appeal that Brown seeks to raise as grounds eleven and twelve of his § 2255 motion. (See Doc. 87). Brown does not allege an intervening change in substantive law necessary to overcome the bar on re-litigation. Accordingly, Brown is barred from raising these claims on collateral review.

Moreover, Brown's challenges to the district court's application of the sentencing guidelines present non-constitutional arguments that are not cognizable in a § 2255 proceeding unless "the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Burke v. United States, 152 F.3d 1329, 1331

(11th Cir. 1998) (quotation omitted); see also Martin v. United States, 81 F.3d 1083, 1084 (11th Cir. 1996) (per curiam) ("Because a defendant has the right to directly appeal a sentence pursuant to the Sentencing Guidelines, the defendant is precluded from raising Guidelines issues in collateral proceedings under § 2255."); Ware v. United States, 2009 U.S. Dist. LEXIS 140943, at *15-17, 2009 WL 2567023, at *8-9 (S.D. Fla. May 14, 2009) (holding that defendant's claim that the Court incorrectly calculated his sentencing guidelines "presents a non-constitutional sentencing claim that is not cognizable on collateral review"); Micolta v. United States, 2008 U.S. Dist. LEXIS 66858, at *16-17, 2008 WL 3889585, at *6 (M.D. Fla. Aug. 18, 2008) ("Micolta's claim is merely an attack upon this Court's interpretation and application of the sentencing guidelines, and thus this issue is not cognizable on collateral attack. Challenges to the application of particular guidelines are not cognizable under section 2255.") (internal citations omitted); United States v. Crum, 2012 U.S. Dist. LEXIS 169193, at *4, 2012 WL 5966635, at *2 (S.D. Ala. Nov. 28, 2012) ("Petitioner's challenge to this Court's imposition of a two-level enhancement under § 2D1.1(b)(1) is a non-constitutional issue that provides no basis for collateral relief in this case."); Hemingway v. United States, 2013 U.S. Dist. LEXIS 206986, at *3, 2013 WL 12364962, at *1 (M.D. Fla. Jan. 10, 2013) ("Attacks on the application of the guidelines or on the calculation of a guidelines

range based on the facts of a particular case generally are not properly addressed on collateral attack.").

Brown cannot show a complete miscarriage of justice. In addition to the fact that the Eleventh Circuit has already rejected his arguments regarding the district court's guidelines calculations, Brown received a sentence at the low end of the guidelines range and well below the maximum statutory term of imprisonment for his offense. (Doc. 85 at 6, 16-17). And, the Court specifically stated that Brown's sentence was reasonable, and that it would have imposed a sentence of this nature even if it had miscalculated the guidelines. (Id. at 21); see Vallas v. United States, 2012 U.S. Dist. LEXIS 93778, at *22, 2012 WL 2681398, at *5 (S.D. Ala. June 7, 2012) ("[E]ven with the alleged guidelines calculation error, Vallas received a sentence . . . at the very bottom of the allegedly erroneous advisory guideline range calculated at the time of his sentencing and was, in any event, well within the maximum statutory penalty of ten years for his conviction. . . . Under these circumstances, the alleged nonconstitutional sentencing error does not rise to the level of a complete miscarriage of justice; therefore, Vallas' claim is not cognizable now on collateral review under § 2255."), report and recommendation adopted, 2012 U.S. Dist. LEXIS 93777, 2012 WL 2681381 (S.D. Ala. July 6, 2012). Thus, Brown is entitled to no relief with respect to grounds eleven and twelve.

## IV. <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED**. <u>See</u> Rules Governing § 2255 Proceedings, R. 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." <u>Id.</u> at § 2253(c)(2).

When a habeas petition is dismissed on procedural grounds without reaching the merits of an underlying constitutional claim, a certificate of appealability "should issue [only] when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). When a habeas petition is denied on the merits of the underlying constitutional claims, a certificate of appealability may issue only when the petitioner demonstrates "that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong."  Id. at 483-84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citation and internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

After reviewing the issues presented in light of the applicable standards, the Court concludes that reasonable jurists would not find the Court's disposition of Brown's claims wrong or debatable, and that none of the issues presented are adequate to deserve encouragement to proceed further.  As a result, Brown is not entitled to a certificate of appealability and, consequently, he should not be permitted to proceed *in forma pauperis* on appeal.

## V. CONCLUSION

For the foregoing reasons, it is recommended that Petitioner Anthony Rashad Brown's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Doc. 90) be **DENIED**, that this action be **DISMISSED with prejudice**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Anthony Rashad Brown.  It is further recommended that

any requests for a certificate of appealability or for permission to appeal *in forma pauperis* be **DENIED**.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing done by the Magistrate Judge
is not specific.

    **DONE** this **30th** day of **June, 2022.**

                        **/s/ SONJA F. BIVINS**
                    **UNITED STATES MAGISTRATE JUDGE**